No. 24-1767

In the
United States Court of Appeals
For the Sixth Circuit

**PETER GUMM**

**Plaintiff-Appellant,**

**v.**

**AK STEEL CORP.,**

**Defendant-Appellee,**

On Appeal from the United States District Court
for the Eastern District of Michigan
Docket No. 21-CV-12441
The Honorable Shalina D. Kumar

**BRIEF OF APPELLANT PETER GUMM**

**ORAL ARGUMENT REQUESTED**

Carla D. Aikens
Carla D. Aikens, P.L.C.
615 Griswold Street, Suite 709
Detroit, Michigan 48226
carla@aikenslawfirm.com
(844)835-2993                    Dated: November 12, 2024

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES..................................................................3

STATEMENT REQUESTING ORAL ARGUMENT ...............................................4

JURISDICTIONAL STATEMENT ..............................................................5

STATEMENT OF ISSUES FOR REVIEW .........................................................6

STATEMENT OF THE CASE.....................................................................7

SUMMARY OF THE ARGUMENT ..................................................................11

ARGUMENT ....................................................................................12

  A.  THE DISTRICT COURT ERRED IN RULING THAT THE SHORTENED LIMITATIONS PERIOD APPLIES AND THAT PLAINTIFF'S ELCRA CLAIMS WERE TIME BARRED ......................................................12

  B.  THE DISTRICT COURT ERRED IN RULING THAT PLAINTIFF HAD NOT ESTABLISHED A REASONABLE JURY COULD FIND THAT DEFENDANT'S PROFFERED NON-RETALIATORY REASON FOR TERMINATING PLAINTIFF WAS MERE PRETEXT....................................14

  C.  THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFF'S EEOC CHARGE DID NOT PROVIDE ADEQUATE NOTICE OF A RETALIATORY HOSTILE WORK ENVIRONMENT CLAIM, THUS PLAINTIFF DID NOT EXHAUST THE ADMINISTRATIVE REMEDIES FOR THIS CLAIM ................................................................18

CONCLUSION AND REQUESTED RELIEF ......................................................23

CERTIFICATE OF COMPLIANCE..................................................................25

CERTIFICATE OF SERVICE .....................................................................26

# <u>INDEX OF AUTHORITIES</u>

## Cases

*Cicero v. Borg-Warner Automotive*, 280 F.3d 579 (6th Cir. 2002) ........................17

*Cline v. Catholic Diocese*, 206 F.3d 651 (6th Cir. 1999) .........................................12

*Dews v. A.B. Dick Co*., 231 F.3d 1016 (6th Cir. 2000) ...........................................15

*Downey v. Charlevoix Co., Bd of Rd Comm'rs*, 227 Mich. App. 621 (1998) .........20

*Hamilton v. General Electric*, 556 F.3d 428 (6th Cir. 2009) ...................................16

*Hendershott v. St. Luke's Hospital*, 2020 WL 60187 (N.D. Ohio) .........................16

*Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006) ....................................21

*McMillon v. City of Kalamazoo*, 983 N.W.2d 79 (Mich. 2023) ..............................12

*Randolph v. Ohio Dep't of Youth Servs*., 453 F.3d 725 (6th Cir.2006) ..................18

*Rayford v. American House Roseville I, LLC*, Case No. 163989 (Mich.) ...............14

*Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133 (2000) .....................14

*Smith v. Rock-Tenn Services, Inc*., 813 F.3d 298 (6th Cir. 2016) ..........................21

*Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359 (6th Cir. 2010) ............................19

## <u>STATEMENT REQUESTING ORAL ARGUMENT</u>

Pursuant to Sixth Circuit Rule 34(a), Plaintiff-Appellant Peter Gumm respectfully requests that the Court grant oral argument in this appeal. The district court's decision granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Reconsideration of the Court's Order Granting Defendant's Motion for Summary Judgment and the legal issues raised in the Court's decision, warrant oral argument with this Court.  The granting of summary judgment has become far too common where there are clear factual disputes that should be decided by a jury, and Plaintiff respectfully requests the opportunity to argue the same before this Honorable Court.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. On September 26, 2023, the district court entered an opinion and order granting Defendant's Motion for Summary Judgment. (Opinion, ECF No.45, PageID.1327-1364; Judgment, ECF No.46, PageID.1365-1366). On October 25, 2024, Plaintiff filed a Motion for Reconsideration of the Court's Order Granting Defendant's Motion for Summary Judgment. (Plaintiff's Motion for Reconsideration, ECF No.48, PageID.1387-1401). On September 11, 2024, the district court entered an order denying Plaintiff's Motion for Reconsideration of the Court's Order Granting Defendant's Motion for Summary Judgment. (Opinion and Order, ECF No. 49, PageID.1405-1412). With that final order standing, Plaintiff timely filed the instant appeal. (Notice of Appeal, ECF No. 50, PageID.1413)

## **STATEMENT OF ISSUES FOR REVIEW**

Whether the District Court properly granted Defendant's Motion for Summary Judgment, where there are genuine issues of material fact?

        Plaintiff-Appellant says:            No.

        Defendant-Appellee likely says:        Yes.


Whether the District Court properly denied Plaintiff's Motion for Reconsideration of the Court's Order Granting Defendant's Motion for Summary Judgment, where there are genuine issues of material fact and the Court should have applied a different analysis for determining pretext?

        Plaintiff-Appellant says:            No.

        Defendant-Appellee likely says:        Yes.

## **STATEMENT OF THE CASE**

Plaintiff-Appellant, a white male, was hired by Defendant-Appellee as a supervisor on April 27, 2015, with a starting monthly salary of $4,833.33 (R. 34-1, p. 9 ¶ 1; Ex. A, Gumm 2015 Offer Letter). Plaintiff excelled in his role and was subsequently promoted to manager of the hot mill in 2017, which came with an additional salary increase. (R. 39-12, Gumm Deposition at 25:20-23). In 2018, Plaintiff received another raise, reaching a monthly salary of $7,163.18 and receiving a $14,067.78 bonus on February 23, 2018 (R. 39-3, Gumm 1.31.18 Paystub). Over three years, Mr. Gumm's salary increased by $2,329.85 per month (R. 39-2, Gumm 2015 Offer Letter; Defendant's Motion, R. 34, p. 10; R. 39-3, Gumm 1.31.18 Paystub). Despite alleged negative discussions at "town hall meetings" and his 2018 Annual Assessment, Defendant continued to raise his salary and award bonuses, recognizing his work ethic in a Position Statement to the EEOC (R. 39-6, AK Steel EEOC Position Statement, p. 2; R. 39-3, Gumm 1.01.2019 Pay Stub; R. 39-4, 2.1.19 Gumm Bonus).

Plaintiff-Appellant's manager, Jason Dearth, evaluated him favorably in the 2018 Annual Assessment, completed on March 22, 2019, covering the period from January 1, 2018, to December 31, 2018. Dearth rated Plaintiff-Appellant "successful" in achieving results, noting his effective use of resources, quality of work, accountability, and leadership. (R. 39-5, Gumm 2018 Annual Assessment).

Under "working with others," Dearth rated Gumm "above expectations," citing his honesty, integrity, and active listening skills (R. 39-5, Gumm 2018 Annual Assessment). During Dearth's deposition on November 7, 2022, he did not reference this positive assessment despite being questioned about annual performance evaluations (R. 39-7, Dearth Deposition, at 82:22-83:7). Dearth claimed he first learned of alleged complaints against Plaintiff-Appellant after the release of the 2018 employee survey, although Plaintiff-Appellant's assessment, conducted afterward, remained positive (R. 34, p. 12; R. 39-5, Gumm 2018 Annual Assessment).

Mr. Gumm is married to an African-American woman and their son worked for Defendant at the time. (R. 39-16 ¶ 13).

Defendant-Appellee, on the other hand has a documented history of racial issues, including differential treatment of African-American employees, varying promotion rates, and separate standards of conduct (R. 39-8, Eric Williams Right to Sue Letter; R. 39-9, Osama Williams EEOC Charge of Discrimination)[1]. Dearth confirmed that he was unaware of any African-American employees being

---

[1] Counsel for Plaintiff represented both Eric Williams and Osama Williams, both of whom resolved their matters with Defendant. *Eric Williams v. AK Steel*, Case No. 2:18-cv-11485-DPH-EAS; Case No. 23-1054 (6th Cir.); *Osama Williams v. AK Steel*, Case No. 17-cv-11394-MFL-DRG. As noted, Mr. Gumm knows both Mr. Williams and Ms. Williams and is familiar with the discrimination they experienced. (R. 39-12, Plaintiff Gumm's Deposition at 79:20-21)

promoted from hourly to salaried supervisor roles during his tenure (R. 39-7, Dearth Deposition at 44:1-7). In one incident, David Klein, a supervisor, threatened an African American employee, Eric Williams, using racial slurs, and ultimately terminated him. (*Williams v. AK Steel*, Order, Case No. 2:18-cv-11485-DPH-EAS, ECF No. 27, PageID.651, filed 05/31/20). Klein also reportedly threw scissors at another Black employee. (*Id*. at 652). Though Defendant disputes that Klein was terminated for his behavior, Plaintiff's testimony in Williams' case included a declaration acknowledging Klein's racist tendencies and attesting to a culture of racial discrimination against Black employees. (*Id*.)

In the summer of 2019, Plaintiff raised concerns when Defendant hired a white employee, Evan Nowitzke, for an Operations Shift Manager role over qualified African-American candidates recommended by Plaintiff. (R. 39-12, Gumm Deposition at 40:16-25). Plaintiff voiced his concerns to Dearth and General Manager LaDale Combs, but instead of addressing these issues, Defendant accused Plaintiff of discriminatory conduct based on unsubstantiated "numerous calls" from employees (R. 39-11, 30(b)(6) Deposition at 43:23-44:10; R. 39-12, Gumm Deposition at 40:11-41:6). In August 2019, Plaintiff reported further discriminatory practices when he observed that Defendant chose to reinstate a white employee over Black employees he had recommended for termination due to misconduct (R. 39-12, Gumm Deposition at 57:23-61:18).

After Plaintiff's complaints, Defendant initiated actions suggesting a concerted effort to remove him from his position. (R.34-18, Charge of Discrimination, PageID.739). Despite years of positive reviews, promotions, and raises, Defendant claimed Nowitzke had resigned due to Plaintiff's conduct—though the two had never met. (R. 39-16). Notes regarding an incident with personal protective equipment (PPE) involving Plaintiff-Appellant and others were later produced, but they failed to corroborate Defendant's assertion that Plaintiff and Nowitzke were involved in any altercation or that Plaintiff was ever suspended for the alleged incident (R. 39-17, Investigative Report and Photographs; R. 39-16, Gumm Declaration, ¶ 2). Dearth's deposition testimony revealed no significant interaction between Plaintiff and Nowitzke and mentioned only a brief encounter in the slab yard during Nowitzke's training period (R. 39-7, Dearth Deposition at 25:10-26:16).

Defendant filed a Motion for Summary Judgment on February 23, 2023. (Defendant's Motion for Summary Judgment, R. 34, PageID.293-326). Plaintiff submitted a response to Defendant's Motion for Summary Judgment on March 31, 2023.(Plaintiff's Response to Defendant's Motion for Summary Judgment, R. 38, PageID.773-800). Defendant replied to Plaintiff's Response to their Motion for Summary Judgment on April 14, 2023. (Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, R. 40, PageID.1303-1318). On

September 26, 2023, the district court entered an opinion and order granting Defendant's Motion for Summary Judgment. (Opinion, ECF No.45, PageID.1327-1364; Judgment, ECF No.46, PageID.1365-1366). On October 25, 2024, Plaintiff filed a Motion for Reconsideration of the Court's Order Granting Defendant's Motion for Summary Judgment. (Plaintiff's Motion for Reconsideration, ECF No.48, PageID.1387-1401). On September 11, 2024, the district court entered an order denying Plaintiff's Motion for Reconsideration of the Court's Order Granting Defendant's Motion for Summary Judgment. (Opinion and Order, ECF No. 49, PageID.1405-1412).

## SUMMARY OF THE ARGUMENT

The trial court erred when it granted Defendant's Motion for Summary Judgment. Further, Plaintiff submits that the trial court further erred in its denial of Plaintiff's Motion for Reconsideration of the Court's Order Granting Defendant's Motion for Summary Judgment. Plaintiff's motion was brought under Fed. R. Civ. P. 59(e) on the basis that: 1) there is a genuine issue of material fact as to whether defendant's proffered non-retaliatory reason for terminating plaintiff was merely pretext; and 2) there is a genuine issue of material fact as to as to Plaintiff's claim of a hostile workplace environment.

## ARGUMENT

This Court reviews a district court's grant of summary judgment *de novo*. *Cline v. Catholic Diocese*, 206 F.3d 651, 657 (6th Cir. 1999). Summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court must draw all reasonable inferences in favor of the non-moving party. *Cline*, 206 F.3d at 657.

### A. THE DISTRICT COURT ERRED IN RULING THAT THE SHORTENED LIMITATIONS PERIOD APPLIES AND THAT PLAINTIFF'S ELCRA CLAIMS WERE TIME BARRED

The district court erred in concluding that the shortened limitations period applied to the Plaintiff's claims under the Elliott-Larsen Civil Rights Act (ELCRA), thus incorrectly holding that Plaintiff-Appellant's ELCRA claims were time-barred. In its ruling, the district court distinguished the facts of *McMillon v. City of Kalamazoo*, 983 N.W.2d 79 (Mich. 2023), finding that the shortened limitations clause in the present case was linked to the Plaintiff's employment application and thus *McMillon* was not applicable to the instance case. However, this distinction is unsupported and fails to recognize that Plaintiff had no knowledge he was allegedly waiving his statutory right to the longer limitations

period provided under Michigan law. Plaintiff's declaration indicates that he was unaware of any agreement to shorten the statute of limitations applicable to his claims (Plaintiff's Declaration ¶ 12, R. 39-16, PageID.1200-1203). This presents a genuine issue of material fact regarding the validity and enforceability of the purported agreement.

In *McMillon*, the Michigan Supreme Court held that summary disposition was inappropriate where there was a genuine issue of material fact as to whether a plaintiff should be bound by an employment-related agreement that purportedly shortened the statute of limitations. Justice Elizabeth Welch, in her concurrence, further emphasized the potential policy implications of such contractual limitations, suggesting the Court should have addressed whether it is permissible to shorten statutory limitations periods in employment agreements at all. *McMillon*, slip op. at 5. Justice Welch's position underscores the inherent unfairness in depriving employees of their statutory rights without clear, informed consent. Here, similar to *McMillon*, Defendant's purported six-month statute of limitations should not automatically apply, as Plaintiff lacked knowledge of such a limitation and was never questioned about it during deposition. The ambiguity surrounding Plaintiff's understanding of this alleged waiver raises a factual issue unsuitable for summary judgment.

Moreover, the Michigan Supreme Court is set to consider the broader policy question of whether shortened limitation periods in employment agreements violate public policy. Oral argument in *Rayford v. American House Roseville I, LLC*, Case No. 163989, is pending. This case may address the enforceability of contractual limitations that curtail statutory rights under the ELCRA. Given the Michigan Supreme Court's interest in this issue, it would be premature to affirm the district court's decision without clarity on the public policy implications. Accordingly, the district court's ruling should be reversed to allow Plaintiff's ELCRA claims to proceed, as substantial questions of fact remain regarding the circumstances of the purported agreement, and the enforceability of such limitations is under active judicial scrutiny in Michigan.

**B. THE DISTRICT COURT ERRED IN RULING THAT PLAINTIFF HAD NOT ESTABLISHED A REASONABLE JURY COULD FIND THAT DEFENDANT'S PROFFERED NON-RETALIATORY REASON FOR TERMINATING PLAINTIFF WAS MERE PRETEXT.**

The district court erred in finding that a reasonable jury could not view Defendant's non-retaliatory reasons for terminating Plaintiff as mere pretext. The court overstepped by weighing evidence in favor of Defendant, infringing on the jury's role as the ultimate arbiter of factual disputes, contrary to the U.S. Supreme Court's guidance in *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 150 (2000). In *Reeves*, the Court emphasized that courts must view the entire

record favorably to the non-moving party and avoid making credibility determinations or weighing evidence, tasks reserved exclusively for the jury. Plaintiff-Appellant is not required to prove overwhelming pretext evidence, but only to demonstrate a genuine dispute of material fact warranting jury assessment. Plaintiff-Appellant has met this threshold with evidence that a reasonable jury could find Defendant-Appellee's stated reasons for termination pretextual.

Plaintiff's claim is consistent with the *McDonnell-Douglas* framework, as applied in *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000), which allows a plaintiff to establish pretext by showing the employer's stated reason for termination: (1) lacks factual basis, (2) did not genuinely motivate the employer, or (3) was insufficient to justify the termination. *Id.* Here, Plaintiff has substantial evidence of pretext, revealing that Defendant's explanations are factually unsupported, insufficient to justify termination, and likely a mask for discriminatory motives.

First, Plaintiff was a high-performing employee with no prior negative evaluations until he began reporting discrimination. After voicing concerns about Defendant's lack of promotions for qualified African American employees, Plaintiff faced apparent retaliatory actions, including a fabricated suspension that Defendant failed to document properly or specify when it occurred. While Defendant neglected to investigate Plaintiff's discrimination complaints, it

conducted an intensive inquiry into unsubstantiated claims of Plaintiff's alleged racism, interviewing supervisors and hourly workers.

Although Defendant's investigation found no substantiation for these allegations among any of the Black hourly workers it interviewed, it terminated Plaintiff based on purported recent interviews with supervisors, conducted in his absence, without informing him of the accusations and giving him an opportunity to defend himself. This selective and exclusionary proces indicates that Defendant's investigation was likely a pretextual sham to justify Plaintiff's termination.

Furthermore, as in *Hamilton v. General Electric*, 556 F.3d 428 (6th Cir. 2009), an employer's pretextual intent can be inferred when they fabricate a "legitimate" reason for termination as a cover for retaliation. The court in *Hendershott v. St. Luke's Hospital*, 2020 WL 60187 (N.D. Ohio) held that a "shoddy" investigation can substantiate pretext if a reasonable jury could conclude that the investigation was a mere facade. Here, Plaintiff presented competent evidence of: (1) his long-standing positive performance record, (2) Defendant's post-hoc suspension, lacking any contemporaneous documentation or timing, and (3) the stark contrast in investigative response to Plaintiff's complaints compared to the claims against him.

The Sixth Circuit's decision in *Cicero v. Borg-Warner Automotive*, 280 F.3d 579 (6th Cir. 2002), also provides a relevant basis for establishing pretext. In *Cicero*, the court found that an employee's strong qualifications, lack of contemporaneous criticism, and regular bonuses undermined the employer's alleged performance-based reason for termination. Like *Cicero*, Plaintiff's 2018 Annual Statement and early 2019 employee surveys reflect high praise, a salary increase, and no negative feedback until he reported discriminatory practices. If Plaintiff's behavior was truly concerning to Defendant, it was not reflected in his annual assessment or compensation.

Lastly, Defendant introduced a questionable "anonymous" complaint, surfaced only after depositions, alleging Plaintiff failed to wear protective equipment—a claim based solely on unsubstantiated statements by HR head Joe Skubic. Defendant's inability to provide corroborative evidence for these complaints further casts doubt on the credibility of its rationale.

Given these indicia of pretext and the inconsistencies in Defendant's narrative, Plaintiff has presented sufficient evidence to warrant jury consideration. The district court's reliance on Defendant's unsubstantiated account, despite conflicting testimonies and documentary evidence, constitutes reversible error. Therefore, this Court should reverse the district court's judgment, reinstate

Plaintiff's claims, and allow a jury to assess the validity of Defendant's proffered reasons for termination.

### C. **THE DISTRICT COURT ERRED IN FINDING THAT PLAINTIFF'S EEOC CHARGE DID NOT PROVIDE ADEQUATE NOTICE OF A RETALIATORY HOSTILE WORK ENVIRONMENT CLAIM, THUS PLAINTIFF DID NOT EXHAUST THE ADMINISTRATIVE REMEDIES FOR THIS CLAIM**

In this case, the district court erred in concluding that Plaintiff's EEOC charge failed to provide adequate notice of a retaliatory hostile work environment claim. The district court's decision rests on the argument that Plaintiff-Appellant did not explicitly mark his claim as a "continuing action" and specified January 10, 2020—the termination date—as the sole incident of retaliation. However, the court's analysis overlooks critical legal standards that govern the interpretation of EEOC charges.

The Sixth Circuit has consistently held that EEOC charges are to be liberally construed, especially for pro se filers, who may not be fully aware of the complexities of legal claims and terminology. Courts are directed to consider any claims reasonably related to or that grow out of the factual allegations in the EEOC charge, even if the specific legal claim is not clearly articulated. In *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 725, 732 (6th Cir. 2006) the Sixth Circuit emphasized that facts alleged in the EEOC charge which would prompt an

investigation into uncharged claims allow plaintiffs to bring suit on those claims. Likewise, in *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 362 (6th. Cir. 2010) the Sixth Circuit underscored that EEOC charges filed by laypersons should be interpreted in light of the general allegations, rather than technical labeling or specific checkboxes.

Here, although Plaintiff did not check the "continuing action" box or explicitly use the term "hostile work environment," the allegations of retaliatory conduct following his discrimination complaints could and should have alerted the EEOC to a broader pattern of workplace hostility. Moreover, the fact that the EEOC does not have a specific checkbox for hostile work environment reinforces the need for a flexible interpretation, as courts should focus on the content of the allegations rather than the form. By discussing his complaints of discrimination, Plaintiff-Appellant's charge would reasonably prompt an EEOC investigation into whether he faced a retaliatory hostile work environment leading up to his termination.

Thus, the court's narrow reading of Plaintiff's EEOC charge disregards the broader context of the allegations, which are sufficient to place the EEOC and the employer on notice of potentially ongoing retaliatory hostility. Accordingly, Plaintiff should not be precluded from pursuing his hostile work environment

claim, and the district court's ruling should be reversed to allow consideration of this claim.

**D. THE DISTRICT COURT ERRED IN RULING THAT PLAINTIFF'S CLAIM OF RETALIATORY HOSTILE WORK ENVIRONMENT FAILED ON THE MERITS.**

The district court erred in dismissing Plaintiff's claim of retaliatory hostile work environment by failing to adequately consider the totality of the circumstances and evidence indicating that Defendant's actions created an abusive work environment. Plaintiff argues that he experienced a hostile work environment as a result of retaliation for his prior complaints regarding discrimination, meeting the elements required for a prima facie case as outlined in *Downey v. Charlevoix Co., Bd of Rd Comm'rs*, 227 Mich. App. 621, 629 (1998).

To succeed on a hostile work environment claim, the conduct must be sufficiently "severe or pervasive" to create an objectively hostile or abusive work environment, a standard that requires examining all circumstances, including the frequency and severity of the conduct, whether it was physically threatening or humiliating, and whether it interfered with work performance *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23 (1993); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). The Sixth Circuit has emphasized that determining whether harassment is severe or pervasive is a "quintessentially a question of fact," generally reserved for

the jury. *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006); *Smith v. Rock-Tenn Services, Inc.*, 813 F.3d 298, 310 (6th Cir. 2016).

The district court found that Plaintiff failed to establish elements three and four of a hostile work environment claim—that the harassment was severe or pervasive, and that there was a causal connection to his protected activity. The court characterized Plaintiff's evidence as speculative, noting that he failed to establish a connection between Defendant's investigation and the alleged retaliatory conduct. However, Plaintiff presented evidence and testimony suggesting retaliatory actions by Defendant, including initiating a baseless investigation into him based on anonymous and unverified accusations. This investigation ultimately led to his termination, despite his prior complaints about the mistreatment of African-American employees.

Key factual disputes, including those arising from Defendant's inconsistent claims, should have precluded summary judgment and warranted jury consideration. For instance:

1. Defendant's investigation reported unsubstantiated accusations against Plaintiff, which he argues were used to brand him as racist despite his prior stance against discriminatory practices. This branding and investigation process created an atmosphere that a reasonable person in Plaintiff's position might perceive as hostile.

2. Defendant alleges that Plaintiff was suspended, but provides no documentation of the suspension – the one document it has about the situation states he was counseled, not suspended – and Plaintiff disputes it. Additionally, testimony from other employees suggests that complaints made against Plaintiff were never addressed or communicated to him, creating further ambiguity about the legitimacy of Defendant's actions.

3. Plaintiff's declaration and other exhibits challenge Defendant's claims, raising genuine questions of fact about whether the investigation and subsequent disciplinary actions were retaliatory and targeted due to his complaints of discrimination.

Based on these points, Plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether Defendant's actions constituted a hostile work environment. By relying on an overly narrow view of the evidence and disregarding the reasonable inferences that a jury might draw, the district court improperly resolved issues of fact. A jury should be allowed to assess whether the alleged retaliatory actions were severe or pervasive enough to create an objectively hostile work environment and whether they were causally connected to Plaintiff's protected activity.

Accordingly, the district court's decision to dismiss Plaintiff's hostile work environment claim should be reversed to allow for a jury trial on these issues.

## CONCLUSION AND REQUESTED RELIEF

WHEREFORE, Plaintiff-Appellant respectfully request this Honorable Court **REVERSE** the District Court's Opinion and Order Granting Defendant's Motion for Summary Judgment, **VACATE** the Judgment, and **REMAND** for further proceedings.

Dated: November 12, 2024                    Respectfully Submitted,

/s/ *Carla D. Aikens*
Carla D. Aikens (P69530)
Rejanae M. Thurman (P85701)
CARLA D. AIKENS, P.L.C.
Attorneys for Plaintiff
615 Griswold Suite 709
Detroit, MI 48226
carla@aikenslawfirm.com
rejanae@aikenslawfirm.com

**ADDENDUM**

**DEISNGATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Record Entry No. | Document Description |
|---|---|
| R. 34 | Defendant's Motion for Summary Judgment |
| R. 34-18 | Plaintiff's Charge of Discrimination |
| R. 38 | Plaintiff's Response to Defendant's Motion for Summary Judgment |
| R. 39-2 | Plaintiff's Offer Letter |
| R. 39-3 | Gumm 1.31.18 Paystub |
| R. 39-4 | Gumm 2.1.19 Paystub |
| R. 39-5 | Gumm 2018 Annual Assessment |
| R. 39-6 | AK Steel EEOC Position Statement |
| R. 39-7 | Dearth Deposition |
| R. 39-8 | Eric Williams Right to Sue Letter |
| R. 39-9 | Osama Williams EEOC Charge of Discrimination |
| R. 39-11 | 30(b)(6) Deposition |
| R. 39-12 | Plaintiff's Deposition |
| R. 39-16 | Plaintiff's Declaration |
| R. 39-17 | Investigative Report and Photographs |

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the type volume limitations

pursuant to Fed. R. App. P. 32(a)(7)(B). The foregoing brief contains words of

3,301 Times 14-point proportional type. The word processing software used to

prepare this brief was Microsoft Word.


Dated: November 12, 2024             /s/ *Carla D. Aikens*
                                     Carla D. Aikens (P69530)
                                     Rejanae M. Thurman (P85701)
                                     CARLA D. AIKENS, P.L.C.
                                     Attorneys for Plaintiff
                                     615 Griswold Suite 709
                                     Detroit, MI 48226
                                     carla@aikenslawfirm.com
                                     rejanae@aikenslawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a copy of the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein through the electronic filing system on November 12, 2024 by:

*/s/ Carla D. Aikens*

CARLA D. AIKENS, P.L.C.
Attorneys for Plaintiff
615 Griswold Suite 709
Detroit, MI 48226
carla@aikenslawfirm.com